IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,265

STATE OF KANSAS,
*Appellee*,

v.

PAUL B. YOUNG,
*Appellant*.

SYLLABUS BY THE COURT

Appellate courts lack jurisdiction to review a sentencing judge's decision applying K.S.A. 2020 Supp. 21-6606 and ordering a defendant to serve a consecutive sentence for a crime committed while on felony probation rather than applying K.S.A. 2020 Supp. 21-6819(a) and ordering a concurrent sentence because manifest injustice results from consecutive sentences.

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 1146, 442 P.3d 543 (2019). Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed July 9, 2021. Judgment of the Court of Appeals dismissing the appeal is affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: Paul B. Young committed a felony while on probation for another felony conviction. The sentencing judge ordered Young to serve the presumptive sentence for his new conviction under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq. The judge also ordered Young to serve his new sentence consecutive to the sentence for the earlier crime. This order applied K.S.A. 2020 Supp. 21-6606, which directs sentencing judges to impose a consecutive sentence in certain circumstances that include when the defendant commits a crime while on probation for a felony. Young appeals, contending the sentencing judge erred by ordering him to serve a consecutive sentence. He argues the judge should have applied K.S.A. 2020 Supp. 21-6819(a), which allows a judge to impose concurrent sentences if the term of imprisonment resulting from application of K.S.A. 2020 Supp. 21-6606 would be manifestly unjust.

The Court of Appeals panel hearing Young's appeal did not reach the merits of his arguments, however. Instead, the panel's majority decided appellate courts lacked jurisdiction over the appeal. Those judges reasoned that the sentencing judge imposed a presumptive sentence and Kansas appellate courts lack jurisdiction to review presumptive sentences because of a jurisdictional limitation imposed in K.S.A. 2020 Supp. 21-6820(c)(1). *State v. Young*, 56 Kan. App. 2d 1146, 1149, 1153, 442 P.3d 543 (2019). One judge dissented, concluding the presumptive sentence definition in the KSGA does not cover the rule in K.S.A. 2020 Supp. 21-6606 requiring a consecutive sentence when a defendant commits a crime while on felony probation. She thus reasoned the restriction on appellate review of presumptive sentences did not extend to decisions about whether

2

manifest injustice results from consecutive sentences. 56 Kan. App. 2d at 1153-54 (Arnold-Burger, C.J., dissenting).

We agree with the dissenting view that the definition of a presumptive sentence does not envelope the sentencing judge's decision about whether to impose consecutive or concurrent sentences. Even so, the Legislature did not allow appellate review of decisions to impose consecutive sentences imposed under K.S.A. 2020 Supp. 21-6606. Instead, it instructed that K.S.A. 2020 Supp. 21-6820 applies "to sentences imposed pursuant to a presumptive sentencing guidelines *system*" of "the revised Kansas sentencing guidelines act, article 68 of chapter 21 of the Kansas Statutes Annotated." (Emphasis added). K.S.A. 2020 Supp. 22-3602(f). The provisions in K.S.A. 2020 Supp. 21-6606, directing consecutive sentences in Young's situation, and K.S.A. 2020 Supp. 21-6819(a), providing the manifest injustice exception to the directive in 21-6606, are part of the legislatively prescribed presumptive sentencing guidelines *system*. K.S.A. 2020 Supp. 21-6820 thus dictates appellate jurisdiction over sentences imposed under the presumptive guideline *system* even if a sentencing judge imposes a presumptive *sentence*, such as Young's. And K.S.A. 2020 Supp. 21-6820 does not supply appellate jurisdiction over a sentencing judge's discretionary determination that manifest injustice does not arise from consecutive sentences imposed under K.S.A. 2020 Supp. 21-6606.

We thus hold we lack jurisdiction, and we affirm the Court of Appeals decision to dismiss this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In 2017, the State charged Young with his fourth offense of violating the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. The State alleged that he did not register the address of his new residence within three business days of moving as KORA mandates. Young was on probation from a 2016 conviction for a KORA violation when he committed the 2017 offense.

Young pleaded guilty in the 2017 case without reaching an underlying plea agreement with the State. Before sentencing, he moved for a durational departure based on mitigating factors. In his motion, Young characterized the circumstances of his violation as an unfortunate misunderstanding. Young said his employer paid him to remodel a home and suggested he might be able to rent the home from the owner. The employer also moved some furniture into the home for Young's use. But the property owner had rented the residence and told Young to remove the belongings. Young said he could not do so immediately, and ultimately the property owner called police who arrested Young for trespassing and failing to register a new address.

Young, while admitting he did not register within three days of changing his residence as required by KORA, argued he had only been at the new place for eight days. He also pointed out that he took responsibility for his failure by pleading guilty even without a plea agreement. And 18 years had passed since he committed the crime that caused his KORA registration obligation—a conviction of aggravated indecent liberties with a child under 14 years.

At the sentencing hearing, Young's attorney repeated the arguments in Young's motion and asked the court to impose a departure sentence. He also asked the judge to

find that consecutive sentences would be manifestly unjust and to impose concurrent sentences. The assistant district attorney disagreed with Young's characterization of the facts, saying he was trying to manipulate the system. She argued that Young told deputies he had been staying at the new residence for about three weeks and that deputies found clothing and furniture there. She also pointed out that Young had three prior convictions of failing to register and was aware of the registration requirements.

The sentencing judge denied Young's motion. The judge did not use the words "manifest injustice," but he declined to find "substantial and compelling" reasons to grant a departure. The judge first revoked probation and imposed the underlying 61-month sentence in the 2016 case. He then imposed the presumptive minimum sentence of 89 months for the 2017 case. This sentence reflected the mitigated term in the grid box corresponding with the severity level of Young's offense and his criminal history. The judge ordered Young to serve the 89 months consecutive to the sentence in the 2016 case.

Young appealed to the Court of Appeals, arguing the judge erred in not finding manifest injustice resulted from the consecutive sentences. The State responded, arguing appellate courts could not review decisions about whether to impose concurrent or consecutive sentences when a judge imposes presumptive sentences as it had when sentencing Young.

A majority of the Court of Appeals panel agreed with the State's argument and dismissed the appeal for lack of jurisdiction. Citing K.S.A. 2020 Supp. 21-6820(c)(1), the majority noted appellate courts lack jurisdiction to review a sentence within the presumptive guidelines range. *Young*, 56 Kan. App. 2d at 1149, 1153. A dissenting member of the panel concluded a determination that manifest injustice did not arise from consecutive sentences falls outside the jurisdictional limitations of K.S.A. 2020 Supp. 21-

5

6820 and the Court of Appeals had jurisdiction. But, moving to the merits of the motion, she concluded the sentencing judge did not abuse his discretion when he imposed consecutive sentences. 56 Kan. App. 2d at 1153 (Arnold-Burger, C.J., dissenting).

Young timely filed a petition for review, which this court granted.

ANALYSIS

Young argues the Court of Appeals majority erred because he is not appealing from the presumptive sentence. Rather, he appeals the judge's decision to order him to serve consecutive sentences and the judge's negative implicit finding that no manifest injustice resulted from the cumulative length of the two sentences. He urges us to adopt the Court of Appeals' dissent and hold we have jurisdiction under K.S.A. 2020 Supp. 22-3602, which broadly grants jurisdiction. He also urges us to reach the merits of whether manifest injustice resulted. On this point, he asks us to disagree with the dissent and to reverse and remand his case for resentencing.

We necessarily begin our analysis of Young's appeal by analyzing whether we have jurisdiction. The question of jurisdiction must be our starting point because Kansas courts have the judicial power to decide only those matters over which they have jurisdiction. *State v. Smith*, 309 Kan. 977, 982, 441 P.3d 1041 (2019). Thus, "[i]f subject matter jurisdiction is in question, that issue needs to be resolved first. The merits come second." *State v. Huerta*, 291 Kan. 831, 840-41, 247 P.3d 1043 (2011).

To determine jurisdiction, we must first examine the relevant jurisdictional statutes because, in Kansas, "[a]ppellate jurisdiction is defined by statute; the right to appeal is neither a vested nor a constitutional right." *Kansas Medical Mut. Ins. Co. v.*

6

*Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010). Thus, a jurisdiction question involves statutory interpretation and presents a question of law. *Smith*, 309 Kan. at 982.

Statutory interpretation begins with the words of the statute because the words chosen by the Legislature are the best expression of legislative intent. If those words are unambiguous, we do not add or ignore words. And we do not look to extraneous sources to discern intent. Instead, we look to legislative history, background considerations that speak to legislative purpose, or canons of statutory construction only if the statute is ambiguous. *State v. Gross*, 308 Kan. 1, 10, 417 P.3d 1049 (2018).

Turning to the statutory basis for appellate jurisdiction, we begin with K.S.A. 60-2101. That statute invests the Court of Appeals (see K.S.A. 60-2101[a]) and the Supreme Court (see K.S.A. 60-2101[b]) with jurisdiction to "correct, modify, vacate or reverse any act, order or judgment of a district court" when necessary "to assure that any such act, order or judgment is just, legal and free of abuse." While this broad grant of jurisdiction is seemingly unlimited, other language in K.S.A. 60-2101 narrows its scope. The limiting phrase most relevant here declares that criminal appellate jurisdiction "shall be subject to" or "prescribed by K.S.A. 22-3601 and 22-3602, and amendments thereto." K.S.A. 60-2101(a) and (b).

The first of these two statutes, K.S.A. 2020 Supp. 22-3601, limits jurisdiction by specifying which of Kansas' two appellate courts—the Court of Appeals or the Supreme Court—is the court with jurisdiction to first hear an appeal. Young properly began this appeal in the Court of Appeals and, once that court decided his appeal, properly brought his appeal before us on a petition for review. See K.S.A. 20-3018(b) (allowing petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has

jurisdiction to review Court of Appeals decisions upon petition for review). No question arises about the jurisdictional limits set out in K.S.A. 2020 Supp. 22-3601.

The second statute addressing jurisdiction over criminal appeals referenced in K.S.A. 60-2101(a) and (b) is K.S.A. 2020 Supp. 22-3602. It broadly grants jurisdiction in an appeal brought by a criminal defendant of "*any* decision of the district court or intermediate order made in the progress of" a criminal case. (Emphasis added.) Young asserts this provision provides us jurisdiction over his appeal. But K.S.A. 2020 Supp. 22-3602 also includes language narrowing our jurisdiction. Four important words—"[e]xcept as otherwise provided"—precede this broad grant of jurisdiction. K.S.A. 2020 Supp. 22-3602(a). In addition, particularly relevant here, subsection (f) refers to yet another statute—K.S.A. 2020 Supp. 21-6820—that applies if an appeal relates "to sentences imposed pursuant to a presumptive sentencing guidelines system" of "the revised Kansas sentencing guidelines act, article 68 of chapter 21 of the Kansas Statutes Annotated." K.S.A. 2020 Supp. 22-3602(f). Thus, if Young's sentence is part of the presumptive guidelines *system*, K.S.A. 2020 Supp. 21-6820 controls our jurisdiction.

The Court of Appeals' majority held K.S.A. 2020 Supp. 21-6820 dictates the outcome of this appeal. In doing so, it focused on subparagraph (c)(1). But the dissent argued (c)(1) did not control, nor did any other part of the statute. To supply context to our discussion of these conflicting views, we set out (c)(1) and other parts of the statute that detail the sentencing issues an appellate court can and cannot review on appeal:

> "(a) A departure sentence is subject to appeal by the defendant or the state. The appeal shall be to the appellate courts in accordance with rules adopted by the supreme court.
>
> . . . .

"(c) On appeal from a judgment of conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review:

> (1) Any sentence that is within the presumptive sentence for the crime; or

> (2) any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record.
> . . . .

"(e) In any appeal from a judgment of conviction, the appellate court may review a claim that:

> (1) A sentence that departs from the presumptive sentence resulted from partiality, prejudice, oppression or corrupt motive;

> (2) the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes; or

> (3) the sentencing court erred in ranking the crime severity level of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."
> K.S.A. 2020 Supp. 21-6820.

None of these provisions explicitly refers to a judge's decision about whether a defendant must serve multiple sentences concurrently or consecutively. Without such a provision, the parties and the Court of Appeals discuss subsections (a), under which an appellate court can review a departure sentence, and (c)(1), under which an appellate court cannot review a presumptive sentence.

9

The Legislature specifies presumptive sentences on sentencing grids for most crimes. A "'presumptive sentence' means the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 2020 Supp. 21-6803(q); see K.S.A. 2020 Supp. 21-6804(f) (applying to nondrug crimes); K.S.A. 2020 Supp. 21-6805(d) (applying to drug crimes; same provision). The grids also include dispositional lines that divide sentences into three categories: presumptive prison, presumptive probation, and so-called border boxes where special rules apply that give the sentencing judge more discretion on whether the disposition will be prison or probation. K.S.A. 2020 Supp. 21-6804(a), (d) (applying to nondrug crimes); K.S.A. 2020 Supp. 21-6805(a), (d) (applying to drug crimes).

"[T]he sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence." K.S.A. 2020 Supp. 21-6815(a). A departure sentence can relate to the disposition or the duration of the sentence and can impose a lesser or a greater sentence. See K.S.A. 2020 Supp. 21-6815 through 21-6818.

The sentencing grid does not include a handful of crimes, including first-degree and felony murder. The KSGA labels these crimes as off-grid. Off-grid crimes are not in any grid blocks and thus do not fall within the statutory definition of "presumptive sentence." *State v. Ortega-Cadelan*, 287 Kan. 157, 163, 194 P.3d 1995 (2008).

Here, both parties agree the judge sentenced Young for two on-grid crimes and he received a term of imprisonment consistent with the severity level of his crimes and his criminal history. This means that Young received a presumptive sentence because the

10

sentencing judge imposed a prison sentence (the presumptive disposition) for a term of months in the grid block that corresponds to the crime severity of his crimes of conviction and his criminal history.

That Young received a presumptive sentence and that the sentencing judge did not depart was critical to the holding of the Court of Appeals majority which stated:

"Consecutive presumptive sentences under the Kansas Sentencing Guidelines Act do not constitute sentencing departures and are not appealable. *State v. Jacobs*, 293 Kan. 465, 466, 263 P.3d 790 (2011).

"Accordingly, we do not have jurisdiction to consider Young's issue on appeal. This appeal is dismissed for lack of jurisdiction." *Young*, 56 Kan. App. 2d at 1153.

But Young argues the Court of Appeals erred when it relied on *State v. Jacobs*, 293 Kan. 465, 466, 263 P.3d 790 (2011), because this court has questioned the cases on which *Jacobs* relied. *Jacobs* cites *State v. Flores,* 268 Kan. 657, 999 P.2d 919 (2000), as authority. And, as Young correctly notes, in *State v. Ross*, 295 Kan. 1126, Syl. ¶ 12, 289 P.3d 76 (2012), this court disapproved the holding in *Flores* and in *State v. Ware,* 262 Kan. 180, 938 P.2d 197 (1997). Our disapproval arose because *Ross*, *Flores*, and *Ware* involved consecutive sentences relating to at least one off-grid crime. In *Ross*, we recognized that *Flores* and *Ware* relied on the sentencing grid's definition of presumptive sentences even though off-grid crimes fall outside the definition. *Ross*, 295 Kan. at 1136-39; see K.S.A. 2020 Supp. 21-6806(c); *Ortega-Cadelan*, 287 Kan. at 163 (definition of "presumptive sentence" does not apply to off-grid crime).

Here, however, all of Young's convictions arise from on-grid crimes. And this court has applied similar reasoning to that in *Flores* and *Ware* in cases involving

11

consecutive on-grid crimes, including *Jacobs*. That distinction supplies at least a superficial reason to say that *Ross*' disapproval of *Flores* and *Ware* does not affect this case. But *Ross*' analysis cannot be dismissed on that basis alone because, just as the definition of presumptive sentence does not include off-grid crimes, it does not address consecutive or concurrent sentences. Because of this silence, Young argues the plain language of the statute requires us to revisit the rationale of *Jacobs* and similar cases involving consecutive sentences for on-grid crimes. We thus must dive deeper to analyze whether *Ross*' disapproval of *Flores* and *Ware* brings doubt on the validity of the holding in *Jacobs* and similar cases about multiple on-grid convictions.

Our dive begins with the KSGA provision covering sentences for multiple convictions: K.S.A. 2020 Supp. 21-6819. That statute is part of the KSGA and article 68. It thus falls within the directive of K.S.A. 2020 Supp. 22-3602(f) ("[A]n appeal by the prosecution or the defendant relating to sentences imposed pursuant to a presumptive sentencing guidelines system as provided in . . . the revised Kansas sentencing guidelines act, article 68 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, shall be as provided in . . . K.S.A. 21-6820, and amendments thereto.").

K.S.A. 2020 Supp. 21-6819 does not itself address the circumstances of this case in which Young was on probation when he committed a felony. But, in subsection (a), it incorporates a pre-KSGA statute that does address Young's situation and then, in subsection (b), addresses other multiple sentences:

> "(a) The provisions of subsections (a), (b), (c), (d), (e) and (h) of K.S.A. 21-6606, and
> amendments thereto, regarding multiple sentences shall apply to the sentencing of
> offenders pursuant to the sentencing guidelines. The mandatory consecutive sentence
> requirements contained in subsections (c), (d) and (e) of K.S.A. 21-6606, and

12

amendments thereto, shall not apply if such application would result in a manifest injustice.

"(b) The sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. The sentencing judge may consider the need to impose an overall sentence that is proportionate to the harm and culpability and shall state on the record if the sentence is to be served concurrently or consecutively." K.S.A. 2020 Supp. 21-6819.

K.S.A. 2020 Supp. 21-6819(a)'s incorporation of K.S.A. 2020 Supp. 21-6606 leads to a general rule directing the sentencing judge to order Young to serve consecutive sentences unless manifest injustice would result. Specifically, K.S.A. 2020 Supp. 21-6606(c) states: "(c) Any person who is convicted and sentenced for a crime committed while on probation . . . for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation." And then K.S.A. 2020 Supp. 21-6819(a) allows for concurrent sentences if applying the consecutive sentence directive would result in manifest injustice.

Young's argument focuses on these provisions. He contends the judge's application of K.S.A. 2020 Supp. 21-6606 and his request for a manifest injustice finding under K.S.A. 2020 Supp. 21-6819(a) fall outside the presumptive sentence limitation on appellate jurisdiction and should be appealable issues. The dissenting judge in the Court of Appeals agreed, reasoning, in part:

"The rule is not part of the KSGA. It only comes into the purview of the KSGA because the KSGA allows the judge to depart from this special mandatory rule in KSGA cases if the judge finds that to apply the rule would result in manifest injustice. K.S.A. 2018 Supp. 21-6819(a). The cases cited by the majority expressing the general rule that the imposition of consecutive presumptive guideline sentences does not constitute a

13

departure do not involve application of the special rule. Accordingly, they have no application to this discussion." 56 Kan. App. 2d at 1157 (Arnold-Burger, C.J., dissenting).

Placing this reasoning in the context of the relevant jurisdictional statutes, to adopt this view we would need to say:  First, Young can appeal the ruling because K.S.A. 2020 Supp. 21-6606 is not in article 68. Second, thus the directive in K.S.A. 2020 Supp. 22-3602(f) does not apply. Third, this, in turn, means that the appellate limitations of K.S.A. 2020 Supp. 21-6820 do not apply. See K.S.A. 2020 Supp. 22-3602(f) ("[S]entences imposed pursuant to a presumptive sentencing guidelines system as provided in . . . the revised Kansas sentencing guidelines act, article 68 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, shall be as provided in . . . K.S.A. 21-6820, and amendments thereto."); K.S.A. 2020 Supp. 21-6820 (defining appealable KSGA issues). But we cannot take these steps in the reasoning.

First, although K.S.A. 2020 Supp. 21-6606 is not in article 68, K.S.A. 2020 Supp. 21-6819 incorporates some of its provisions, including subsection (c), into the KSGA. And K.S.A. 2020 Supp. 21-6819 states the manifest injustice exception. Second, the directive in K.S.A. 2020 Supp. 22-3602(f) does apply. K.S.A. 2020 Supp. 22-3602(f) does not limit its scope to statutes only found in the KSGA or article 68 of chapter 21. Instead, as we have emphasized, it applies to all sentences ordered under the guidelines *system* set out in article 68. K.S.A. 2020 Supp. 21-6819(a)'s incorporation of K.S.A. 2020 Supp. 21-6606 brings 21-6606 into the system provided for in article 68. Plus, the only place the manifest injustice special rule is found is 21-6819(a), which is part of the KSGA and article 68. Thus, the application of K.S.A. 2020 Supp. 21-6820 cannot be dismissed just because 21-6606 requires Young to serve a consecutive sentence unless

14

doing so would be manifestly unjust. So, third, the appellate limitations of K.S.A. 2020 Supp. 21-6820 do apply.

This brings us back to K.S.A. 2020 Supp. 21-6820's silence about consecutive and concurrent sentences generally and, more specifically, about applying the manifest injustice special rule. As we have noted, Young argues we can discern legislative intent through the statute's plain language despite this silence. We disagree. The silence leaves a gap that creates an ambiguity. Cf. *State v. Quested*, 302 Kan. 262, 268, 352 P.3d 553 (2015) (legislative silence on whether sentence can be imposed consecutive to out-of-county sentence creates an ambiguity that permits rules of construction and other aids for statutory construction). And, from the time of the KSGA's adoption, appellate courts have filled this gap caused by silence about consecutive and concurrent sentences by examining legislative history and applying rules of construction—tools we implement only when an ambiguity exists. *Gross*, 308 Kan. at 10; see *State v. McCallum*, 21 Kan. App. 2d 40, 46, 895 P.2d 1258 (1995) (construing language now found in K.S.A. 2020 Supp. 21-6820 to hold defendant could not appeal sentencing judge's decision to run sentences consecutive; noting rule of construction "may be applied to assist in determining actual legislative intent which is not otherwise manifest"). Kansas appellate courts have addressed this ambiguity in several decisions.

Soon after the Legislature adopted the KSGA, in *State v. Peal*, 20 Kan. App. 2d 816, 893 P.2d 258 (1995), a Court of Appeals panel considered whether it had jurisdiction to consider Vick T. Peal's challenge to a sentencing judge's decision to impose consecutive presumptive sentences for aggravated robbery and robbery. The panel held it lacked jurisdiction. Its decision rested on several rationales.

15

First, it reasoned the lack of any mention of the right to appeal the imposition made it proper to "[a]pply[] the maxim *expressio unius est exclusio alterius*," which means the expression of one thing is the exclusion of the other. 20 Kan. App. 2d at 821. Applying that maxim, the panel reasoned, "leads to the conclusion that the legislature did not intend this court to entertain sentencing appeals on grounds other than those stated in K.S.A. 1993 Supp. 21-4721 [now K.S.A. 2020 Supp. 21-6820]." 20 Kan. App. 2d at 821. The panel concluded this meant that appellate court "jurisdiction to consider an appeal challenging a sentence imposed pursuant to the KSGA is limited to those grounds specified in K.S.A. 1993 Supp. 21-4721(a) and (e) and illegal sentences." 20 Kan. App. 2d at 821.

Second, the *Peal* panel distinguished consecutive sentences from departure sentences. The panel noted the sentencing judge had not imposed a departure sentence because both sentences were presumptive sentences. It then cited and quoted the Kansas Sentencing Guidelines Act Implementation Manual (1992), p. 4-17, which stated: "'In contrast to departure sentences, consecutive nondeparture sentences are *not* appealable.' (Emphasis in original.)" 20 Kan. App. 2d at 822.

Finally, the *Peal* panel approvingly quoted *State v. Starks*, 20 Kan. App. 2d 179, 183, 885 P.2d 387 (1994), where another Court of Appeals panel, although addressing another issue, had observed that the provisions of K.S.A. 1993 Supp. 21-4721(c)(1) [now K.S.A. 2020 Supp. 21-6820] were "'adopted by the legislature to foreclose the type of appeals which had previously been lodged under the former statutory scheme alleging that the sentencing court abused its discretion.'" *Peal*, 20 Kan. App. 2d at 823. The *Peal* panel then concluded it "is consistent with the legislature's intent to foreclose such appeals" of a sentencing judge's decision to impose concurrent or consecutive sentences. 20 Kan. App. 2d at 823.

16

A year later, in *McCallum*, 21 Kan. App. 2d 40, another Court of Appeals panel reached the same holding under the same rationales. It also discussed arguments raised by the defendant that had not been discussed in *Peal*. Addressing these additional arguments, it first rejected the contention that K.S.A. 1993 Supp. 21-4721 [now K.S.A. 2020 Supp. 21-6820] had to be construed in favor of the defendant given that "although consecutive sentences per se are not included in the list of issues which may be appealed under K.S.A. 1993 Supp. 21-4721(a) and (e), neither are they listed among those issues which cannot be appealed under subsection (c)." 21 Kan. App. 2d at 45. It also rejected an argument that it should allow appeals because doing so would adhere to pre-KSGA caselaw. The panel rejected both arguments because the legislative history showed that the Legislature intended a change in the law. 21 Kan. App. 2d at 49.

The *McCallum* panel also discussed the manifest injustice provision upon which Young relies. See K.S.A. 2020 Supp. 21-6819(a) (formerly codified at K.S.A. 1993 Supp. 21-4720[a]). But it did not decide whether application of the manifest injustice provision was appealable because the provision did not apply under the facts. Terry W. McCallum's consecutive sentences arose from multiple convictions in the same case rather than because the defendant committed a new offense while on probation. The panel noted, however, that "the legislature has provided safeguards that prevent 'manifest injustice'" unique to McCallum's situation. 21 Kan. App. 2d at 48 (citing K.S.A. 1993 Supp. 21-4720[c][3] [now codified at K.S.A. 2020 Supp. 21-6819]). It thus viewed all these decisions as involving similar constrained discretion.

This court first addressed the issue of whether a defendant could appeal a sentencing judge's decision to impose consecutive or concurrent sentences in *Ware*, 262 Kan. 180.

17

The *Ware* court rejected an argument that the Court of Appeals wrongly decided *Peal* and *McCallum*. In fact, it quoted the analysis in *Peal* and then stated: "We agree therewith. . . . The issue raised by the defendant is not an appealable issue. Accordingly, the appeal must be dismissed for lack of jurisdiction." *Ware*, 262 Kan. at 184. As we have discussed, in *Ross*, we recognized that Gregory E. Ware's off-grid conviction distinguished his situation from the presumptive sentence rationale. See *Ross*, 295 Kan. at 1136-39.

This court followed *Ware* in *Flores*, 268 Kan. at 660, which we also disapproved in *Ross*, 295 Kan. at 1136-39. *Flores* arose from consecutive sentences of life imprisonment for first-degree felony murder and 34 months' imprisonment for attempted voluntary manslaughter. This court cited the holding in *Ware* and reaffirmed it. *Flores*, 268 Kan. at 660.

Both *Ware* and *Flores* thus embraced the rationale of *Peal* and *McCallum*. And, while *Ross* held that rationale did not apply when the sentencing relates to off-grid crimes, it did not criticize the rationale when applied to appeals arising from on-grid presumptive sentences. *Ross*, 295 Kan. at 1136-39. And, in cases involving on-grid crimes only, this court has reaffirmed the rule that a sentencing judges' decision about whether to impose consecutive or concurrent sentences in multiple conviction sentences within a case is not an appealable decision. See, e.g., *Jacobs*, 293 Kan. at 466 (citing *Flores*); *State v. Bramlett*, 273 Kan. 67, 68, 41 P.3d 796 (2002) (same).

We agree with Young's argument that *Ross* weakens reliance on the definition of presumptive sentence as a sole rationale for deciding this appeal. But the rationale of the cases holding that appellate courts lack jurisdiction over sentencing decisions about

18

concurrent versus consecutive sentences does not depend solely on the presumptive sentence rationale. Instead, as we have discussed, the reasoning includes application of rules of construction and reference to legislative history given the ambiguity arising because K.S.A. 2020 Supp. 21-6820 does not explicitly address the appealability of consecutive and concurrent sentences.

But none of these cases specifically discuss the rule in the context of imposing a consecutive sentence because a defendant was on probation when he or she committed a new crime. Young argues he "is not asking an appellate court to review to a district court's consecutive sentencing order. Rather, he is requesting review of the court's finding that manifest injustice would not result from imposition of consecutive sentences between his cases."

Young and the Court of Appeals cite the only case that appears to have addressed the specific question of an appellate court's jurisdiction under K.S.A. 2020 Supp. 21-6819(a). *Young*, 56 Kan. App. 2d at 1150-51; 56 Kan. App. 2d at 1157-58 (Arnold-Burger, C.J., dissenting). In that case, *State v. Rose*, No. 90,111, 2004 WL 117358 (Kan. App. 2004) (unpublished opinion), Steven A. Rose, like Young, was on probation for a felony when he committed and later pleaded guilty to another felony. The sentencing court sentenced Rose to concurrent sentences after revoking probation in the earlier case and while announcing a sentence in the latter case. On appeal, the parties' positions were flipped from the arguments made here. On a question reserved, the State argued it should be able to appeal a sentencing court's decision to impose concurrent sentences after finding manifest injustice.

The *Rose* panel discussed *Ware* and distinguished it because "the only discretion the district court had was in deciding whether manifest injustice would result in the

19

otherwise mandatory consecutive sentences, not in deciding whether to order consecutive or concurrent sentences." 2004 WL 117358, at *2. The panel agreed with the State that appellate courts have jurisdiction to review a sentencing court's finding of manifest injustice. 2004 WL 117358, at *3.

Chief Judge Arnold-Burger, in her dissent in Young's appeal, agreed with the reasoning in *Rose*, explaining:

"Under K.S.A. 2018 Supp. 21-6819(a) a court has the discretion to determine whether manifest injustice exists to override the mandatory non-KSGA sentencing rule in K.S.A. 2018 Supp. 21-6606(c). Such a decision is distinctively different than whether to impose consecutive or concurrent presumptive KSGA sentences and is more akin to a departure sentence. This interpretation is further bolstered by the language of K.S.A. 2018 Supp. 21-6819(b). In context, immediately following the provision in subsection (a) indicating that concurrent sentences in combination probation and new crime sentencing cases can be given upon a finding that it would result in manifest injustice to give consecutive sentences, subsection (b) says: 'The sentencing judge shall *otherwise* have discretion to impose concurrent or consecutive sentences in multiple conviction cases.' (Emphasis added.) This language indicates that application of subsection (a) is different than the standard consecutive/concurrent sentencing discretion discussed in cases cited by the majority." *Young*, 56 Kan. App. 2d at 1158.

We agree the manifest injustice special rule creates a different test when exercising discretion in the decision-making process about whether to impose a consecutive or concurrent sentence. In most multiple conviction cases, the Legislature's direction to the sentencing judge is to exercise "discretion to impose concurrent or consecutive sentences in multiple conviction cases" by "consider[ing] the need to impose an overall sentence that is proportionate to the harm and culpability." K.S.A. 2020 Supp. 21-6819(b); see *State v. Brune*, 307 Kan. 370, 371, 409 P.3d 862 (2018) (decisions on

whether to impose a concurrent or consecutive sentence traditionally fall within the sound discretion of sentencing courts); *State v. Horn*, 302 Kan. 255, 256-57, 352 P.3d 549 (2015) (same). But when the defendant commits a crime while on felony probation, the judge exercises discretion to decide if manifest injustice results. See *State v. Cramer*, 17 Kan. App. 2d 623, Syl. ¶ 5, 841 P.2d 1111 (1992) (manifest injustice "standard of review . . . is whether the trial court has abused its discretion by imposing a sentence which is obviously unfair and shocks the conscience of the court").

Even so, in both situations the sentencing judge is exercising discretion. As noted in *McCallum*, 21 Kan. App. 2d at 48, the Legislature put guardrails on the extent of the discretion in both situations. And in both situations the exercise of discretion results in a decision about whether to require consecutive or concurrent sentences. So, while the guardrails may differ, the discretionary decision relates to the same outcome.

Also, in both situations, the Legislature made no provision for appealing the discretionary decision. See *Ross*, 295 Kan. at 1136-38. The lack of such a provision underlies *Jacobs*' outcome and the outcome of the decisions on which it relies. We find no basis to deviate from that rationale just because a sentencing judge's discretion arises under K.S.A. 2020 Supp. 21-6819(a) rather than 21-6819(b). The Legislature, through K.S.A. 2020 Supp. 22-3602(f), expressed its intent to have K.S.A. 2020 Supp. 21-6820 control all appeals arising from the presumptive sentencing guidelines system, not just those dealing with presumptive sentences and departures. This intent supports applying the maxim that the expression of one thing is meant to exclude the other and concluding that the Legislature did not intend to grant appellate courts jurisdiction to hear appeals on grounds other than those specified in K.S.A. 2020 Supp. 21-6820. Likewise, the legislative history supports this conclusion.

Simply put, appellate courts lack jurisdiction to review a sentencing judge's decision applying K.S.A. 2020 Supp. 21-6606 and ordering a defendant to serve a consecutive sentence for a crime committed while on felony probation rather than applying K.S.A. 2020 Supp. 21-6819(a) and ordering a concurrent sentence because manifest injustice results from consecutive sentences. We thus conclude that the Court of Appeals majority correctly held it lacked jurisdiction over Young's appeal.

Judgment of the Court of Appeals dismissing the appeal is affirmed.